SANFORD *v.* MOSS. ·

*(Supreme Court, General Term, Fifth Department. March, 1892.)*

NEGOTIABLE INSTRUMENTS—BONA FIDE INDORSEES.

   In an action by the holder of notes given by defendant in payment for seed rye
bought of a seed company at a high price, it appeared that the company's agent, a
friend of defendant, overpersuaded him by the promise that the company would
sell for him part of the crop raised therefrom at an enhanced price, which the com-
pany failed to do, and defendant alleged this as a false representation. The con-
tract involved the cheating of some one, and defendant fully understood its terms.
*Held* that, though it was doubtful how far the false representation induced the
contract, it was of sufficient importance to put plaintiff to proof of his being a *bona
fide* purchaser for value, before maturity.

Appeal from special term, Niagara county.

Action by Harvey Sanford against Isaac B. Moss on promissory notes.
From a judgment for plaintiff, and from an order denying a motion for new
trial upon the minutes, defendant appeals. Affirmed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*Burrell & Parker,* for appellant. *Richard Crowley,* for respondent.

LEWIS, J. The promissory notes upon which the judgment in this action
was obtained were given by the defendant in payment for 20 bushels of seed
rye, at the price of $15 a bushel, pursuant to an agreement entered into be-
tween the defendant and the Pennsylvania Seed Company, Limited, by the
terms of which the seed company was to furnish to the defendant the rye at the
price named, and the defendant was to sow the rye. The seed company agreed
to sell for the defendant, from the crop raised from the seed rye the following

year, 40 bushels, at $15 a bushel, the seed company reserving to itself, as commission for selling, $5 a bushel. The defendant is a farmer residing in Niagara county. He is 65 years of age, and owns a farm in that county of 370 acres. He knew the rye he was agreeing to buy and pay $15 a bushel for was not worth to exceed 65 to 75 cents a bushel. He testified that Mr. Seeley, the agent of the seed company, explained to him the plan of operation the company proposed to pursue in selling grain. It necessarily involved cheating some one eventually; but Seeley, whom defandant testified he had known for a number of years, and had done business with him, assured him it was a great chance to make money; that it was all right; and made such strong protestations of friendship for the defendant that he allayed any apprehension the defendant may have had that he might be the victim, and so he entered into the agreement. He testified that he fully understood the terms of the contract, and gave the promissory notes, one payable to H. Seeley or bearer, and the other to W. J. Curtiss or bearer. Unlike many transactions in grain, the 20 bushels of rye were actually delivered to the defendant. He sowed the rye the same year, but the seed company failed to carry out the agreement by selling the rye for the defendant the following year. The defendant's evidence tended to show that the seed company's agent made false representations as to the responsibility and standing of the seed company. It is quite doubtful if the false representations had any influence in inducing the defendant to enter into the contract and give the notes. They were, however, of sufficient importance to put the burden upon the plaintiff of proving, in order to recover, that he was a *bona fide* purchaser of the notes for value, before maturity. The plaintiff gave evidence tending to show that he purchased the notes before they were due, and paid full value for them, and that he had no knowledge or information when he purchased them that they were obtained by fraudulent means, but supposed them to be genuine notes. The questions of fact were submitted to the jury under a charge of the court quite as favorable to the defendant as the evidence justified, and the jury, upon evidence sufficient to sustain their verdict, found for the plaintiff. We have examined the defendant's exceptions, and find nothing in them calling for a reversal of the judgment. The judgment and order appealed from should be affirmed. All concur.